811 P.2d 565

Manuel VIGIL, as guardian ad litem for Melissa Vigil, a minor child, and Kraig Vigil, a minor child, and Theresa Vigil, Plaintiffs–Appellees,

v.

CALIFORNIA CASUALTY INSURANCE COMPANY, Defendant–Appellant.

No. 18837.

Supreme Court of New Mexico.

May 14, 1991.

James E. Thomson, Santa Fe, for defendant-appellant.

Berardinelli & Associates, David J. Berardinelli, Santa Fe, for plaintiffs-appellees.

## OPINION

MONTGOMERY, Justice.

The issue in this case is whether the individual medical payments coverages for two or more automobiles under one or more insurance policies may be "stacked." The issue is not quite one of first impression, because we recently held in *Sanchez v. Herrera*, 109 N.M. 155, 783 P.2d 465 (1989), that the medical payments provisions under the separate policies in that case could *not* be stacked, based on an unambiguous exclusionary clause in each policy. In the present case—in which the policies lack an exclusionary clause—we reach the opposite result, based on the language of the policies and on well-accepted rules of construction applicable to cases of insurance-policy ambiguity. We thus affirm the trial court's judgment permitting both "intra-policy" and "inter-policy" stacking.

### I.

Effective April 5, 1988, Manuel and Theresa Vigil renewed their two automobile insurance policies with California Casualty Insurance Company, insuring five vehicles. The first policy (# 1) insured a 1983 Toyota pickup, a 1981 Dodge Aries, and a 1978 Ford Fairmont. The second policy (# 2) insured a 1985 Chevrolet pickup and a 1982 Toyota pickup. Each policy provided $5,000 of medical payments coverage for "each person"; that amount was shown on each policy's "declarations page" on the line for the "vehicle number" assigned to each vehicle, except that there was no med pay coverage on the 1982 Toyota pickup. Under the first policy, in other words, there were three medical payments coverages of $5,000 each, one associated with each vehicle; on the second policy there was one

coverage of $5,000, associated with the Chevrolet pickup. The declarations page for each policy showed the amount of the premium charge for each medical payments coverage, as it did for each of the other coverages under the policy—liability for bodily injury and property damage, uninsured motorist, collision, comprehensive, etc.

On May 4, 1988, one of the three vehicles insured under the first policy, the Ford Fairmont, was involved in an accident. Melissa Vigil—Manuel and Theresa's minor daughter—was driving the Ford at the time. She was pregnant with Kraig Vigil, and Theresa was a passenger in the vehicle. Each of the three Vigils—Melissa, Kraig and Theresa—sustained injuries and medical expenses in excess of $5,000. California Casualty paid $5,000 in medical expenses on behalf of each of the three Vigils, but it refused any further payments based on its interpretation of policy # 1 as providing medical payments coverage only with respect to a specific "occupied" vehicle (i.e., a ceiling of $5,000 per person on the Ford). Theresa and Manuel—the latter as guardian ad litem for Melissa and Kraig—then brought suit against California Casualty for a declaratory judgment that they were entitled to stack the medical payments coverages under both policies, so that there would be $20,000 of insurance available to defray the medical expenses of each of the three injured Vigils.

After a bench trial, the trial court found in favor of the Vigils and issued a judgment declaring that they were entitled to stack the four medical payments coverages under the two policies. The court recited in its judgment: "The reasonable expectations of the Plaintiffs arising from purchasing the policies and paying four separate premiums for medical payments coverage was that they would be entitled to stack the four coverages in exchange for the payment of the four premiums." California Casualty appeals, contending that the ruling contravenes the policy language and our holding in *Sanchez*.

## II.

In *Sanchez*, we recognized that one of the considerations favoring stacking in the uninsured motorist coverage context is absent in the analogous, but different, context of medical payments coverage: There is no statute or public policy requiring stacking of medical payments coverages. 109 N.M. at 158, 783 P.2d at 468. Thus, we resolve the issues in this case by construing the language in the contracts between the parties, aided by principles of construction in the insurance policy setting. *See id.; Vargas v. Pacific Nat'l Life Assurance Co.,* 79 N.M. 152, 155, 441 P.2d 50, 53 (1968) (measure of parties' rights and duties is found in their intention as expressed in their contract).

In each policy, California Casualty promises (under Part II, entitled "Expenses for Medical Services" and defining "Coverage C—Medical Payments"):

> To pay all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:
>
> Division 1.  To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," caused by accident,
>
>> (a) while occupying the owned automobile,
>>
>> (b) while occupying a non-owned automobile, but only if such person has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission, or
>>
>> (c) through being struck by a moving highway vehicle or trailer of any type while not occupying a motor vehicle.[1]

---

1. Coverage is also afforded, under Division 2 immediately following Division 1 as quoted in the text, to other persons besides the named insured and his or her relatives in certain circumstances. Division 2 is not relevant to this appeal.

It is undisputed that Theresa was a "named insured" and that Melissa and Kraig were relatives within the policy definitions. The policy defines "owned automobile," in relevant part, as "a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded[.]" The Ford was described in the policy and a specific premium charge was assessed for the coverage. Therefore, because each of the three Vigils was "occupying the owned automobile," [2] it is clear that each had coverage under Part II of policy #1 for his or her reasonable medical expenses incurred within two years from the date of the accident.

The next question—the critical question on this appeal—is the amount of such coverage. This question is not answered by the coverage provisions in Part II of the policy, or by any other provision in Part II, except the "Limit of Liability" clause. That clause reads:

> The limit of liability for medical payments stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as a result of any one accident.

It will be noted that this clause contains no reference to any vehicle listed in the Declarations and does not otherwise associate the amount of medical payments coverage (or any limitation thereon) with any particular automobile.

When one looks to the Declarations page of policy #1, one sees three amounts of medical payments coverage for "each person"—$5,000, listed three times, for a total of $15,000. It is true that each $5,000 figure in the "medical payments" column is located on a line preceded by the numeral "1," "2," or "3." These numerals correspond with the designation of each of the three vehicles insured under the policy. A natural inference, therefore, is that each medical payments coverage amount is associated with one of the three vehicles. As just noted, however, the "Limit of Liability" clause does not make this inference express, and so one is left with the following question arising from the ambiguity created by the failure of the limitation clause to limit the coverage to a particular vehicle: Is the medical payments coverage amount limited to the single amount *for the particular vehicle* occupied by the insured at the time of the accident (as contended by California Casualty), or is the afforded coverage the total of the amounts for each person in the "medical payments" column?

This question can be answered in (at least) two ways: by applying the contractual language to other situations that could easily arise under the wording of the policy, and by resorting to settled principles of insurance-policy construction. Approaching the question in the first of these ways, we ask: Suppose the insured was not occupying an "owned automobile" at the time of the accident, but rather was occupying a non-owned automobile with the owner's permission (under Division 1(b)) [3] or was not occupying any motor vehicle at all (under Division 1(c))? There is no question that the insured would have medical payments coverage in either of those situations, but in what amount? Looking at the declarations page, one could not associate the amounts in the "medical payments" column with any particular vehicle or vehicles, because the three vehicles described in the policy would be irrelevant. In each

**2.** As is obvious, we regard the policy's use of the definite article "the" in the phrase, "while occupying the owned automobile," as unimportant. The word "the" is part of the insurer's printed form; the form could just as easily have used the indefinite article "an," or the phrase could have been worded "while occupying one of the owned automobiles."

**3.** The policy defines "non-owned automobile" as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile, except that a private passenger, farm or utility automobile, or a trailer used therewith, owned by, or principally operated by a resident of the named insured's household and insured in the Company, shall be considered a non-owned automobile while operated by the named insured[.]"

of the hypothesized situations, the insured either would be occupying a vehicle not described in the policy or would not be occupying any vehicle at all. The only reasonable conclusion is that the amount of medical payments coverage would be the total listed in the "medical payments" column, namely, $15,000. In other words, in those two hypothesized situations, the intra-policy coverages for medical payments clearly would be stacked.

We see no reason to construe the policy as requiring a different result when the insured is occupying his or her own vehicle, described in the policy. As we said in *Sanchez*, "Because most people would expect to carry their maximum amount of coverage while inside an insured car, the preclusion of medical payments recovery would, like with uninsured motorist coverage, frustrate the insured's legitimate expectations." 109 N.M. at 160, 783 P.2d at 470. The policy is at least ambiguous in the situation when the insured is occupying an owned vehicle insured under the policy; and ordinary principles of insurance law require the policy to be construed in favor of the insured. *See, e.g., id.* at 159, 783 P.2d at 469.

In *Sanchez*, we likened medical payments insurance to uninsured motorist coverage, which, we said, *"follow[s] the person,* leading to the same incongruities, and the same frustration of the insured's expectations." *Id.* at 160, 783 P.2d at 470 (emphasis added). *See also* 8A J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 4902, at 225 (1981) (medical payments indorsement "is closely akin to a personal accident policy"); R. Keeton & A. Widiss, *Insurance Law* § 5.9, at 584 (1988) (medical payments coverage "is a first-party, no-fault insurance coverage"). In this respect, med pay coverage is "limited personal accident insurance" which, like uninsured motorist coverage (and subject to any explicit policy limitations or exclusions), applies if at the time of the accident the insured "was occupying the [automobile] described in his policy or was on foot, or on horseback, or while sitting in his rocking chair on his front porch or while occupying a non-owned automobile * * *."

*Cardin v. Royal Ins. Co. of America,* 394 Mass. 450, 452, 476 N.E.2d 200, 202 (1985) (quoting *Motorists Mut. Ins. Co. v. Bittler,* 14 Ohio Misc. 23, 32–33, 235 N.E.2d 745, 751 (1968)); *accord Chavez v. State Farm Mut. Automobile Ins. Co.,* 87 N.M. 327, 330, 533 P.2d 100, 103 (1975) ("The uninsured motorists protection covers the insured and the family members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch."). Unless the policy explicitly provides otherwise, there is no particular relationship between the insurance benefits available to the insured and the automobile or other vehicle involved in the accident. If the insured incurs medical expenses as the result of an accident which occurs in one of the situations contemplated by the coverage clause, the insured is entitled to benefits under the policy, and the amount of those benefits is not limited by the happenstance that the accident does or does not occur in a particular way or with reference to a particular vehicle.

Many courts around the country have already allowed stacking of medical payments coverage in various circumstances. *See generally* Annotation, *Combining or "Stacking" Medical Payment Provisions of Automobile Liability Policy or Policies Issued by One or More Insurers to One Insured,* 29 A.L.R.4th 49 (1984); 8A Appleman, *supra,* § 4902.55. The authors of the *Appleman* treatise observe:

Since actuarial computations demonstrate that the true cost of such coverage [medical payments] is nominal, and a separate premium is paid upon each contract, it is quite surprising that the carriers do not voluntarily, and cheerfully, permit a stacking of such coverage * * *.

This is a fairer result, to all parties, than [refusing to permit stacking] * * *. [T]he most equitable result seems to be to permit a stacking of benefits without awarding duplicate benefits.

*Id.* at 278–79.

The court below, in entering its declaratory judgment in favor of the Vigils, fo-

cused on the fact that a separate premium charge was assessed for each medical payments coverage under the two policies, thereby giving rise to reasonable expectations on the part of the Vigils that their four med pay coverages would be stacked. The court relied on the analogy in the uninsured motorist field provided by *Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 646 P.2d 1230 (1982), in which we held that uninsured motorist benefits under a single policy insuring more than one vehicle could be stacked (*i.e.*, we upheld "intra-policy" stacking), based in part on the fulfillment this result accorded to the insured's reasonable expectations arising from payment of multiple premiums. *Id.* at 170–71, 646 P.2d at 1234–35. Many of the courts that have permitted stacking of medical payments coverages have done so on the rationale that separate premiums for separate coverages entitle the insured to the benefit of what he or she has paid for. *See, e.g.*, Annotation, *supra*, 29 A.L.R.4th at 76–77, 83–84. We gave considerable weight to this factor in *Sanchez*, 109 N.M. at 159–60, 783 P.2d at 469–70, even though we rejected stacking in that case based on an unambiguous policy exclusion.

While we do not retreat from anything we have said in the uninsured motorist field or, in *Sanchez*, in the medical payments field, we do not rest our holding in this case primarily on the ground that separate premiums were charged for the separate medical payments coverages. Most automobile insurance involves the assessment of separate premium charges on the individual items of coverage provided by the policy. Premiums are computed and stated separately, in other words and for example, on each bodily injury and property damage liability coverage (depending, *inter alia*, on liability limits, number and ages of drivers, etc.), on each uninsured motorist coverage (depending on number of vehicles and liability amounts), on each collision or comprehensive coverage (depending on number and values of vehicles, amounts of deductibles, etc.), and the like. A particular insured may or may not have

expectations based on the premiums he or she has paid, and those expectations may or may not be reasonable in a particular case. In the *present* case, we hold that intra-policy stacking was available based on the wording of the policy and the kind of insurance at issue, as well as on what the trial court found were the reasonable expectations of the insured.

## III.

■ We turn now to inter-policy stacking. At first blush, the coverage clause in policy #2 appears not to be applicable. Theresa, Melissa, and Kraig Vigil were not occupying a non-owned automobile, as contemplated by coverage sub-clause (b), because the Ford was owned by a named insured and (if principally operated by a resident of the household—*e.g.*, Melissa) was not being operated by a named insured at the time of the accident.[4] Nor were the Vigils "not occupying a motor vehicle" as contemplated by sub-clause (c); they were occupying the Ford. Arguably, under sub-clause (a), they were not occupying an "owned automobile" either, because the Ford is not listed on the declarations page—is not "described in this policy"— policy #2.

But we think it would be a silly result to hold that the insurer could escape liability for stacked medical payments coverage by the simple expedient of issuing a separate policy for each insured vehicle. The policy at issue here—policy #2—provides in sub-clause (a) that medical payments coverage exists when a named insured or a relative sustains bodily injury in an accident "while occupying the owned automobile[.]" "Owned automobile" is defined as an "automobile described in this policy for which a specific premium charge indicates that coverage is afforded[.]" The declarations page indicates that a specific premium charge was assessed for the medical payments coverage under policy #2; the only question is whether the Ford was described "in this policy." We think it does no violence to the intention of the parties to hold, and we do hold, that "this policy"

---

**4.** See the definition of "non-owned automobile" *supra* note 3.

refers to both policy # 1 and policy # 2, since, substantively and to all intents and purposes, they constitute *the same policy.*

Only one policy form was offered into evidence at the trial in this case. The record is not clear on whether that document was an attachment to the declarations page for either policy # 1 or policy # 2, or was a form or specimen policy obtained from California Casualty, or was otherwise provided to the court for purposes of the trial. The record is clear, however, that the terms of "the policy" were identical for both policy # 1 and policy # 2.

For all that appears in the record, the declarations page for policy # 2 was simply a continuation of the declarations page for policy # 1—as if the computer had simply run off on another page the coverages provided for the Chevrolet and the 1982 Toyota. The two policies have the same named insureds, the same insurer, the same effective date, the same bodily injury and property damage liability limits—in fact, they appear the same in all material respects except that the vehicles insured under each are different and one of the policies, # 2, lists a bank as a lienor or lessor.[5] In light of the identical provisions of the two policies, we think that a fair reading of the phrase "described in this policy" is "described in *these policies,*" referring to the policies issued by the same insurer, to the same insureds, on the same date, for essentially the same coverages on their five vehicles. An alternative, and equally fair, reading of "this policy" is that it refers to both policy # 1 and policy # 2 as a "combination policy," providing the Vigils' automobile insurance on those five vehicles. *See State Farm Mut. Automobile Ins. Co. v. Castaneda,* 339 So.2d 679, 681 (Fla.App. 1976) (where three policies issued on different automobiles to same insured by same insurer provided medical payments coverage, policies would be read and construed with reference to each other, and therefore stacked); *cf. Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 45, 294 N.W.2d 141, 155 (1980) (no distinction could be made for uninsured motorist coverage purposes on basis that family owned vehicles were insured under a single rather than multiple policies).

As indicated, we believe this construction does no violence to the parties' intent. Had the three injured Vigils been occupants of a non-owned vehicle with the owner's consent, or had they not occupied any vehicle at all but had been struck by a vehicle, both policies clearly would have afforded coverage. And, had the operator of the Ford been Theresa rather than Melissa, there could well have been coverage under both policies (under sub-clause (a) in policy # 1 and under subclause (b) in policy # 2).[6] It seems highly doubtful that the premium for the med pay coverage under policy # 2 was computed on the basis that coverage would be provided in all cases except when the insureds were occupying another of their owned vehicles, insured by the same company but under a different policy, and operated by someone other than the named insured. In this situation—to fall back on the "reasonable expectations" theory—the Vigils would have been more than reasonable in assuming that the premium paid for med pay coverage on the Chevrolet afforded them coverage in *all* of these situations, not just the ones that might be found applicable by piecing the policy wording together in a highly literal and perhaps overly technical way.

The judgment of the district court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM, J., concur.

---

5. Under policy # 2, the Vigils obtained collision and comprehensive insurance, whereas such coverage was omitted for the other four vehicles. It appears, therefore, that a reason for this "separate" policy might have been that the bank had a lien on the Chevrolet.

6. This—coverage under sub-clause (b) in policy # 2—assumes that the Ford might have been principally operated by a resident of the named insured's household, such as Melissa, under the definition of "non-owned automobile," *supra* note 3.