**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ACE FIRE UNDERWRITERS
INSURANCE COMPANY,

     Plaintiff Counter Defendant -
Appellant,

v.

DAVE ROMERO, JR., as personal
representative of the wrongful death
proceedings of Jose A. (Felix) Chavez,
deceased; ISABEL CHAVEZ,
individually; BRANDON CHAVEZ,
individually; LUIS GUTIERREZ,
individually; TIFFANY FISHER,
individually,

     Defendants Counter Plaintiffs -
Appellees.

No. 14-2073

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:12-CV-01129-KG-RHS)**
_____

Danny L. Worker, Lewis Brisbois Bisgaard & Smith, LLP, Chicago, Illinois; (Stephen D. Hoffman, Lewis Brisbois Bisgaard & Smith, LLP, Phoenix, Arizona, with him on the briefs), for Plaintiff Counter Defendant-Appellant.

Randy Knudson, Doerr & Knudson, P.A., Portales, New Mexico; (W.H. Greig, Greig & Richards, P.A., Clovis, New Mexico, with him on the brief), for Defendant Counter Plaintiffs-Appellees.

_____

Before **HOLMES**, **MATHESON**, and **MORITZ**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

ACE Fire Underwriters Insurance Company appeals the district court's declaration that a policy ACE issued offers total coverage up to $2 million for an accident involving two insured vehicles: a tractor and trailer. Because we agree with ACE that the policy instead limits its liability to only $1 million, we reverse.

BACKGROUND

## I.    The Accident and Insurance Dispute

In the early morning hours of March 24, 2011, Jesse Hale left Finney Farms driving a tractor-trailer rig. When he pulled onto a highway adjacent to Finney Farms, the trailer detached from the tractor. Hale drove his tractor off the roadway and back onto the farm, hoping to make a quick U-turn and return to the roadway so that he could pull up behind the trailer and illuminate it on the dark highway. But before he could complete this maneuver, Jose Chavez's vehicle collided with the unlit trailer, killing Chavez.

The personal representative of Chavez's estate, Dave Romero, Jr., together with Chavez's surviving family members (collectively, the Estate), brought a wrongful death action against Finney Farms and Hale. As the insurer of the tractor and the trailer, ACE reached a settlement with the Estate. But the parties conditioned the settlement upon litigating the available limits of the policy. ACE maintained that the policy provisions limited its liability to $1 million *per accident*, regardless of the

2

number of covered autos[1] involved. The Estate, on the other hand, insisted that ACE's liability under the policy was $1 million *per covered auto* involved in each accident. That interpretation of the policy would cap ACE's liability in this case at $2 million because, according to the Estate, the tractor and the trailer were both involved in the accident. Under the terms of the settlement, ACE initially paid the Estate $1 million. But it agreed to pay it an additional $550,000 if the court accepted the Estate's interpretation of the policy.

## II. The District Court's Original Decision

In accordance with the terms of the settlement agreement, ACE sought a declaratory judgment as to the policy limits, and both parties moved for summary judgment. The district court initially sided with ACE, concluding that the policy unambiguously limits ACE's liability to $1 million per accident under New Mexico contract law.[2]

In reaching that conclusion, the court relied heavily on two provisions in the policy: (1) Item Two of the declarations, titled "SCHEDULE OF COVERAGES AND COVERED AUTOS," and (2) a section in the body of the policy titled "Limit of Insurance." App. vol. 1, 38, 76. The court explained that Item Two—which lists "$1,000,000" in the liability coverage row under the heading "LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS"—unambiguously limits liability coverage to $1 million per accident. *See id.* at 38. The court further

---

[1] "Auto" is a defined term under the policy encompassing both the tractor and trailer at issue.

[2] The parties agree that New Mexico law controls in this diversity action.

3

explained that the Limit of Insurance provision—which provides that regardless of the number of covered autos involved, "the most [ACE] will pay for the total of all damages . . . resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations"—reinforces that the policy's provisions limit liability coverage to Item Two's $1 million cap. Accordingly, the court entered summary judgment in favor of ACE.

## III.    The District Court's Decision Following a Motion to Reconsider

But following the district court's initial decision, the New Mexico Court of Appeals reached the opposite conclusion after considering a similar policy. *See Lucero v. Northland Ins. Co.* (*Lucero I*), 326 P.3d 42 (N.M. Ct. App. 2014), *rev'd*, 346 P.3d 1154 (N.M. 2015). In *Lucero I*, the court interpreted an insurance policy (the Northland policy) containing (1) an Item Two that was nearly identical to the Item Two in the ACE policy, and (2) a Limit of Insurance provision that was identical to the Limit of Insurance provision in the ACE policy. *Id.* at 49; *Lucero v. Northland Ins. Co.* (*Lucero II*), 346 P.3d 1154, 1156 (N.M. 2015) (reproducing Item Two of the Northland policy, which includes a "LIMITS OF LIABILITY" column and a corresponding entry of "$1,000,000 each 'accident'" in the liability coverage row).

The *Lucero I* court concluded that the Northland policy limited liability to $1 million for each covered auto involved in an accident. 326 P.3d at 44. In reaching that conclusion, the court found it significant that Item Two included a qualifier stating, "Each of these coverages will apply only to those 'autos' shown as Covered

4

'Autos.'" *Id.* at 44.[3] Relying on this language, the court explained, "It follows that each vehicle involved in an accident that is a 'Covered "Auto"' carries $1 million in liability coverage." *Id.* at 46-47.

The *Lucero I* court further concluded that the Limit of Insurance provision didn't apply when more than one covered auto was involved in the same accident. Instead, the *Lucero I* court reasoned that the Limit of Insurance provision only prevented aggregating "policy limits applicable to more than one vehicle *where the other vehicles are not involved in the accident*." *Id.* at 47 (quoting *Progressive Premier Ins. Co. of Ill. v. Kocher ex rel. Fleming*, 932 N.E.2d 1094, 1098 (Ill. App. Ct. 2010)).

Alternatively, the *Lucero I* court noted that even if the Limit of Insurance provision applied, the policy was ambiguous. *Id.* at 48-49. The court explained that the Northland policy's listing of covered autos "show[ed] a separate premium paid for each listed vehicle, and each listed vehicle [was] provided $1 million in coverage." *Id.* at 49. In contrast, the Limit of Insurance provision ostensibly "eliminate[d] all liability coverage available to one of the two vehicles involved in the accident," resulting in an ambiguity that the court construed against the insurer. *Id.*

Following *Lucero I*, the Estate in this case filed a motion to reconsider in the district court, arguing that the New Mexico Court of Appeals' interpretation of the Northland policy controlled here because—according to the Estate—the Northland

---

[3] The ACE policy contains a nearly identical qualifier. *See* App. vol. 1, 38.

policy at issue in *Lucero I* was "virtually identical" to the policy at issue here. App. vol. 4, 498. The district court recognized the nonbinding nature of the New Mexico Court of Appeals' decision, but concluded that "the New Mexico Supreme Court would most likely adopt the New Mexico Court of Appeals' ruling in *Lucero* [*I*]." App. vol. 5, 554. Then, applying *Lucero I*, the district court concluded that the qualifier contained in Item Two of the ACE policy provides up to $1 million in liability coverage for each covered auto. And the court explained that the Limit of Insurance provision—if interpreted to apply when more than one covered auto was involved in a single accident—would eliminate coverage to all but one covered auto. Accordingly, the district court found the ACE policy ambiguous and construed the ambiguity against ACE. The court thus amended its judgment to reflect that the policy limited liability to $1 million per covered auto involved in an accident.

## IV.    The New Mexico Supreme Court's Decision

But the legal landscape was about to shift again. That's because after the district court amended its judgment to reflect New Mexico's intermediate appellate court's ruling in *Lucero I*, the New Mexico Supreme Court agreed to review *Lucero I*. This action prompted ACE to seek (1) a stay of the case pending the New Mexico Supreme Court's decision, and (2) reconsideration of the district court's decision granting rehearing and adopting the rationale of *Lucero I*. But the district court declined to reconsider or stay enforcement of its judgment against ACE. ACE appealed, and we held the appeal in abeyance pending the New Mexico Supreme Court's review of *Lucero I*.

6

Ultimately, the New Mexico Supreme Court reversed *Lucero I* and, in doing so, specifically rejected *Lucero I*'s characterization of the Northland policy as ambiguous. Instead, the state's highest court characterized that policy as unambiguously "limit[ing] [the insurer's] exposure to $1,000,000 per accident regardless of the number of covered autos involved in any one accident." *Lucero II*, 346 P.3d at 1158. In arriving at this conclusion, the court relied on three sections of the Northland policy: (1) Item Two; (2) the Limit of Insurance provision; and (3) a "Liability Coverage" provision. That provision stated, in relevant part, "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." *Id.* at 1157.[4] Reading these three provisions together, the New Mexico Supreme Court concluded that Northland's promise to "pay all sums an 'insured' legally must pay" remained subject to, per the Limit of Insurance provision, "the Limit of Insurance for Liability Coverage shown in the Declarations." And that limit, according to the New Mexico Supreme Court, was $1 million per accident, as specified in Item Two. *Id.* at 1157.

Moreover, the New Mexico Supreme Court rejected the portion of *Lucero I*'s analysis that construed Item Two's qualifier—i.e., "Each of these coverages will apply only to those 'autos' shown as Covered 'Autos'"—as meaning Northland promised to pay $1 million for each auto involved in an accident. *Id.* at 1156-57. The

---

[4] Notably, the ACE policy contains an identical Liability Coverage provision. *See* App. vol. 1, 73.

court explained that the policy didn't say, "[E]ach of these coverages will apply to [each of] those autos shown," but rather said, "[E]ach of these coverages will apply *only* to those 'autos' shown." *Id.* The court noted that "the provision [was] phrased not as a grant but as a limitation," and emphasized the "critical distinction between a *grant* of coverage and 'the *amount* of such coverage.'" *Id.* at 1157-58 (quoting *Vigil v. Cal. Cas. Ins. Co.*, 811 P.2d 565, 567 (N.M. 1991)). Thus, the court rejected *Lucero I*'s conclusion that Item Two's qualifier granted each covered auto $1 million in liability coverage. Instead, the court concluded that while Item Two "makes liability coverage available for each of the covered autos . . . it does not grant policy limits for each covered auto." *Id.* at 1158.

Finally, the court noted that even "if there were reasonable grounds for disagreement over the terms" of Item Two, language in the Limit of Insurance provision "settle[d] the matter." *Id.* at 1158. The court explained that, read together, the Limit of Insurance provision and Item Two clearly indicate that, regardless of the number of covered autos involved in a single accident, the most Northland will pay "is the Limit of Insurance for Liability Coverage shown in the Declarations," i.e., "$1,000,000 each accident." *Id.*; *see also id.* at 1158, 1160 (citing cases from numerous other jurisdictions "interpreting similar insurance clauses" and "reach[ing] a similar conclusion").

Following *Lucero II*, we lifted the abatement of ACE's appeal.

8

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the district court's grant of summary judgment de novo, employing the same legal standard applicable in the district court." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1311 (10th Cir. 2009). In this diversity action, "we apply state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).

Here, the parties stipulated to the relevant facts and agree that New Mexico law governs our interpretation of the policy. Thus, the question before us is purely a matter of contract interpretation under New Mexico law. *See Ponder v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 960, 964 (N.M. 2000) (explaining that the court resolves "questions regarding insurance policies by interpreting their terms and provisions in accordance with the 'same principles which govern the interpretation of all contracts'" (quoting *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997))). When interpreting the provisions at issue, we will "look to the rulings of the [New Mexico Supreme Court], and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).

In that regard, the parties disagree over whether we may "look to" *Lucero II* as the New Mexico Supreme Court's controlling opinion on this issue. *See id.* ACE argues *Lucero II* controls because the Northland policy contained language identical

9

to the language in the ACE policy, placing *Lucero II* "on all fours with the present case." Aplt. Br. 2, 16. The Estate, on the other hand, maintains that material distinctions exist between the ACE and Northland policies and that *Lucero II* therefore doesn't apply.[5]

Specifically, the Estate points to Item Three of the ACE policy, which is titled "SCHEDULE OF COVERED AUTOS YOU OWN." App. vol. 1, 48, 52 (reproduced in relevant part below).

### ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN

| COVERED AUTO NO | DESCRIPTION Year, Model, Trade Name, Serial Number or Vehicle Identification Number (VIN) | | | Original Cost New* | TERRITORY Town & State where the Covered Auto will be principally garaged | Terr Code |
|---|---|---|---|---|---|---|
| 33 | 2006 | YUKON GMC | 1GKEK63U76J110942 | $60,000 | FORT SUMNER, NM | 106 |
| 34 | 2004 | TRAILER RED RIVR | 1TKLR43254W073948 | $50,000 | FORT SUMNER, NM | 106 |
| 35 | 2008 | SEMI TRLR DOONAN | 1D9BG532381609391 | $29,000 | FORT SUMNER, NM | 106 |
| 36 | 2008 | SEMI TRLR DOONAN | 1D9BG532581609392 | $29,000 | FORT SUMNER, NM | 106 |
| 37 | 1996 | TRCK TRCT KENWORTH | 1XKDD69X7TJ686596 | $50,000 | FORT SUMNER, NM | 106 |
| 38 | 2008 | SEMI TRLR DOONAN | 1D9BG532981609332 | $29,000 | FORT SUMNER, NM | 106 |
| 39 | 2002 | UTLTY TRL LONE-CAR | 1L9CP18202S238441 | $1,500 | FORT SUMNER, NM | 106 |
| 40 | 1995 | TRCK TRCT FRGHTLNR | 2FUYDZYB0SA538005 | $70,000 | FORT SUMNER, NM | 106 |

COVERAGES-PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead).

| COVERED AUTO | LIABILITY | | PERSONAL INJURY PROTECTION Limit stated in each PIP End minus ded shown below | Premium | ADDED PIP (Limit stated in each Added PIP End) Premium | OBEL (N.Y. only) (Limit Stated in OBEL End.) Premium | PROP PROT (Mich only) Limit stated in PPI End minus ded shown below | Premium |
|---|---|---|---|---|---|---|---|---|
| | Limit | Premium | | | | | | |
| 33 | $1,000,000 | $366 | | | | | | |
| 34 | $1,000,000 | $19 | | | | | | |
| 35 | $1,000,000 | $19 | | | | | | |
| 36 | $1,000,000 | $19 | | | | | | |
| 37 | $1,000,000 | $418 | | | | | | |
| 38 | $1,000,000 | $19 | | | | | | |
| 39 | $1,000,000 | $19 | | | | | | |
| 40 | $1,000,000 | $418 | | | | | | |

---

[5] In support of its motion to reconsider, the Estate initially represented to the district court that *Lucero I* should control because it involved "a policy *virtually identical* to the policy in this case." App. vol. 4, 498 (emphasis added). On appeal, however, the Estate reverses course and insists that *Lucero I* "has no applicability or relevance to an interpretation of the [ACE] policy" because—contrary to the Estate's initial position—the policies contain key differences. Aplee. Br. 19.

That schedule lists both the tractor and trailer at issue[6] and includes a qualifier noting that the "[a]bsence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead." *Id.* Immediately following this qualifier, the policy separately lists the tractor and trailer, and provides a $1 million liability limit for each vehicle. *Id.* The Estate argues that Item Three—which it insists wasn't in the Northland policy, thus rendering *Lucero II* inapplicable—introduces two sources of ambiguity into the policy language, which the Estate asserts must be construed against ACE. *See Ponder*, 12 P.3d at 967 (explaining that a court should construe ambiguities against the insurer as a matter of public policy).

At the outset, it's not at all clear that the Northland policy didn't contain this or a similar schedule. In fact, *Lucero I* and *Lucero II* both point out that the Northland policy included a schedule of covered autos, and *Lucero I* further described the schedule as a "separate listing of covered autos, which in turn shows a separate premium paid for each listed vehicle, and each listed vehicle is provided $1 million in coverage." *Lucero I*, 326 P.3d at 49. This description suggests that the Northland policy may have contained a substantially similar schedule to the ACE policy's Item Three, particularly in light of the striking similarities between the other provisions of the two policies. And if the Northland policy did contain a similar Item Three, *Lucero II* would foreclose the Estate's argument.

---

[6] The parties agree that covered auto numbers 38 and 49 refer to the trailer and tractor at issue, respectively.

11

But because neither *Lucero I* nor *Lucero II* contained a visual depiction of the Northland policy's schedule of covered autos or mentioned whether the Northland policy contained an "[a]bsence of a deductible or limit entry" qualifier similar to the one in the ACE policy, *see* App. vol. 1, 48, 52, we assume for purposes of this decision that the policies differ in this regard.

Even so, we disagree that Item Three renders the ACE policy ambiguous. The Estate first argues that the policy is ambiguous because the $1 million-per-covered-auto limits of Item Three conflict with the $1 million-per-accident limit of Item Two. More specifically, the Estate points to the qualifier included with Item Three: the "[a]bsence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead." App. vol. 1, 48, 52. The Estate reads this qualifier as standing for a corollary principle: namely, that the Item Two, per-accident limit "*only* applies to the specific covered autos identified in the policy under Item Three" when there are no limits specified in Item Three. Aplee. Br. 15. Accordingly, it argues that because each covered auto listed in Item Three is associated with a liability limit in the next column, those limits, and *only* those limits, apply for each of the 51 covered autos.

We disagree. At the outset, the policy clearly indicates that the autos listed in Item Three are subject to Item Two's $1 million-per-accident limit. *See* App. vol. 1, 38 (indicating that covered autos denoted by symbol 7 are subject to Item Two's $1 million liability limit); *id.* at 72 (explaining that symbol 7 denotes those autos described in Item Three). And contrary to the Estate's characterization of the policy's

12

provisions, the policy contains no indication or statement that the per-accident limit

of Item Two *only* applies in the absence of a deductible or limit entry in Item Three.

Rather, Item Three simply says that the "[a]bsence of a deductible or limit entry in

any column below means that the limit or deductible entry in the corresponding

ITEM TWO column applies instead." *Id.* at 48, 52. The plain meaning of this

provision is that if ACE *hadn't* provided a liability limit for each covered auto in

Item Three, the per-accident limit of Item Two would serve as the appropriate per-

covered-auto limit. *See Christmas v. Cimarron Realty Co.*, 648 P.2d 788, 790 (N.M.

1982) (explaining that it's "established that courts will apply the plain meaning of the

contract language as written in interpreting terms of a contract").

The Estate's proffered interpretation of the language—that the per-accident

limit of Item Two *only* applies when there is no limit provided in Item Three—

requires us to read the word "only" into the policy when that word doesn't appear

there.[7] We decline to do so. *See Heimann v. Kinder-Morgan CO$_2$ Co.*, 144 P.3d 111,

115 (N.M. Ct. App. 2006). Instead, we apply the plain meaning of the policy's

language: Each covered vehicle carries the corresponding liability limit provided in

---

[7] In addition to adding language to the policy that isn't there, the Estate's interpretation commits the fallacy of denying the antecedent. *See TorPharm, Inc. v. Ranbaxy Pharm., Inc.*, 336 F.3d 1322, 1329 n.7 (Fed. Cir. 2003) (defining fallacy of denying antecedent as "[a]n invalid argument of the general form: If p, then q. Not p. Therefore, not q"). Here, the policy states that if there is no limit listed in Item Three, then the limit in Item Two applies. The Estate insists this means that if there *is* a limit listed in Item Three, then the limit in Item Two *doesn't* apply. "But this does not logically follow, as an example illustrates: 'Because it's not cold outside, it's not snowing. It is now cold outside, therefore it must be snowing.'" *Agri Processor Co. v. NLRB*, 514 F.3d 1, 6 (D.C. Cir. 2008).

13

Item Three. But regardless of the number of covered autos or their individual liability limits for a single accident, ACE's *per-accident* liability is capped at the limit provided in Item Two: $1 million. *See Mayfield Smithson Enters. v. Com-Quip, Inc.*, 896 P.2d 1156, 1161 (N.M. 1995) (refusing to give defendant's proffered contract interpretation weight because it was "incongruous with other contract provisions" and made "great portions of [the] agreement surplusage"); *Brooks v. Tanner*, 680 P.2d 343, 346 (N.M. 1984) (noting "each part of the contract is to be accorded significance according to its place in the contract"). Thus, Item Three's qualifier doesn't render the policy ambiguous.

And this conclusion also controls the Estate's second ambiguity argument: i.e., that the liability limits specified in Item Three render the Limit of Insurance provision ambiguous. The Estate points out that the Limit of Insurance provision limits liability for any one accident to "the Limit of Insurance for Liability Coverage *shown in the Declarations*." App. vol. 1, 76 (emphasis added). It suggests that it's unclear which limit "shown in the Declarations" this provision refers to. And it argues that a reasonable insured would understand the Limit of Insurance provision as referring to the limits listed in Item Three because "the Item Two limit would *only* apply if no coverage was listed in the column [of Item Three] relating to coverage." Aplee. Br. 18 (emphasis added).

But once again, accepting this argument would require that we read the word "only" into Item Three's qualifier. And for the reasons discussed above, we decline to do so.

14

Because Item Three introduces no ambiguity into the policy, the New Mexico Supreme Court's *Lucero II* decision controls. Specifically, under New Mexico law, we interpret the ACE policy as establishing that ACE's promise to "pay all sums an 'insured' legally must pay" remains subject to, per the Limit of Insurance provision, "the Limit of Insurance for Liability Coverage shown in the Declarations," which includes Item Two's $1 million-per-accident limit. *See Lucero II*, 346 P.3d at 1157. Accordingly, the ACE policy unambiguously limits ACE's liability to $1 million per accident regardless of the number of covered autos involved.[8] We therefore reverse and remand to the district court with instructions to enter judgment in favor of ACE.

---

[8] Because we conclude that the policy limits ACE's liability to $ 1 million per accident regardless of the number of covered autos involved, we need not resolve whether the trailer was "involved" in the March 24, 2011, accident.